The third case is number 2010830 McCullough v. AIG. Mr. Moreno, you may proceed when you're ready. Thank you, Your Honor. May it please the court, Steve Moreno on behalf of the McCulloughs. And I understand the court has been somewhat active today, and I appreciate that. I will jump to what I think is the important issue. The important issue is consistency. There are four separate proceedings over the same issue in two different countries. There is the McCullough case, which this court recently ruled on and sent back for consideration based on the Supreme Court's reversal of Otocompo. There is the action we hear about today, where the same district court ruled the way he did and is up on appeal. There is a proceeding by AIG against the McCulloughs in Hong Kong to prevent them from proceeding here. And in which AIG has obtained a roughly $400,000 attorney's fee award against the McCulloughs for them arguing that they're not bound by being held into court, which is what Judge Gail has actually said. And then there was a proceeding that happened in this case, where while the proceedings were going forward, AIG went and had a proceeding, instituted an arbitration of sorts, where it essentially received a default judgment, granting it the specific relief it asked for without any reasoning. And that's, I think, why AIG said this appeal is now moot. So let me ask you just a factual question. So the order of compelling arbitration, did you appeal that? We did indirectly. What does that mean indirectly, just so I'm clear? We are appealing the court's resolution of the contract interpretation, such that he ignored what we believe is the appropriate part. But it's a two-step process, because respectfully, Judge, I want to make sure I'm not overstepping my bounds. We first asked to intervene. And if this court says we can't intervene, then I don't know that the court necessarily gets to the argument about what Judge Gail's didn't get right in terms of the policy has a global liberalization clause. And the global liberalization clause says expressly, if we issue a policy in a foreign jurisdiction, you have a claim where foreign law will apply, we're going to take the favorable terms in that other policy and insert them here. And the argument, to get to your question, the argument is that if you look at those foreign policies, and we filed, I think, three or four exemplar policies with the court, one of the most significant changes that have to be adopted into the AIG policy is there is no binding arbitration. I guess what I mean, and I may have mixed parties there, but so as to mootness, I mean, the Hong Kong arbitration has gone forward and gone to judgment, right? The Hong Kong arbitration as to the rainforest entities was resolved by a rejection, I believe. I don't want to use the wrong terms. There was non-participation by the rainforest entities, and a default was entered where the court just entered an order saying, this is what AIG asked for. I'm granting it. But a decision, right? I mean, AIG achieved a decision in Hong Kong. They did. I apologize for turning my notes from my other computer here. I apologize. And so I guess the question that I should have asked you is not whether you appealed, but did the rainforest entities appeal the order compelling them to arbitration? No, and that's part of the argument. That's part of the intervention argument. Well, I guess I just don't quite understand how that cake can be unbaked. The arbitration in Hong Kong, how can that cake be unbaked? Well, this court, I mean, there's been a battle of jurisdictions since day one. If the court goes back to the first McCullough action, where there was actually a tort case that evolved into the coverage action that's pending now in front of Judge Gales that just got reversed, McCullough won, we call it. While AIG was first in default, then it sought to vacate default, then it sought to compel arbitration, ultimately the court, Judge Gales said, no, you don't have to go to arbitration. You're not bound by that. While that was happening, in the days of the motions being filed, AIG went to Hong Kong and asked that court to exercise jurisdiction over the McCulloughs, where Texans residents bring an action in Florida, and said the McCulloughs had to go to Hong Kong. And Judge Gales, when he ruled and said no, they did not, the court in Hong Kong doesn't have jurisdiction. Not long thereafter, the Hong Kong court said, yes, you do have jurisdiction, and because you lost that issue we're awarding about a $400,000 attorney's fee against you. The same thing with the rainforest arbitration, it was default, and then there was a million dollar, U.S. dollars, translated from Hong Kong, a million dollar award as against the rainforest defendants in favor of AIG. Let me ask you this, just one more, and then I'll shut up, I promise. But as to mootness, what exactly is it that even if you were allowed to intervene, you could do? What's the vehicle by which you would seek to upset the Hong Kong arbitration award as between AIG and the rainforest entities? I mean, I see in the Federal Arbitration Act, in Chapter 1 of the Federal Arbitration Act, domestic arbitrations, you can actually file a motion to vacate an arbitration. I don't see that remedy in Chapter 2 as to international arbitrations. Is there a motion to vacate remedy that exists in international arbitrations? No, because the underlying argument, which is prevailing as to the McCullers under the current law of the case, is that the McCullers don't have to be held in the court and aren't obligated to go to Hong Kong. So, you have a side issue of Mr. Von Der Gultz is in the process of, or as an AIG has pointed this out in a lot of his papers, he's either in the process of going to prison or he's in prison for an unrelated tax issue. He no longer has any incentive. Marina, let me ask the question in a slightly different way. Yes, Your Honor. The court compelled arbitration. The case went off to Hong Kong. An arbitrator addressed and resolved the issues to the extent they were properly before him. All of that's clear, right? I would argue that the arbitrator rejected the participation. All I'm saying is the arbitrator ruled. It was a judgment that came out of the arbitral proceeding in Hong Kong. Has AIG yet moved to confirm the arbitration award in the federal district court? And if the answer is no, is the case still open and outstanding? The AIG has, I believe, filed it with the federal district court, although it's a little unclear whether it was in the McCullough one. Are you telling me AIG? I thought AIG admitted that it had not yet moved to confirm the arbitration award. Yet. And that's why it seemed to me. The case is still open. And if they had moved to confirm the arbitration award, that could spawn a challenge to the legitimacy of the arbitration. Not very likely, but it would be possible. And that hasn't happened yet. Have I misapprehended this? No, Your Honor. Now I understand what you're asking. This would be the argument I would make if I was sitting in your shoes. Well, then I'm making an argument. But it's it's it's complicated. I mean, I understand. But I want to make what's complicated, simple. I'm a simple guy. Simple question. You wanted to intervene here. If you were given leave to intervene here and AIG sought to confirm the award, then they have three years, as I understand the law to do it. You could come in and you could challenge whether or not the district court should confirm the award. That's why the case isn't moved. I think that's your argument. Maybe that's right. Maybe that's wrong. But have I misapprehended this? You have not. And that's part of it. That's a much more articulate way of saying what we've been saying. Thank you. We've been saying that there are arguments that need to be raised to to challenge whether the arbitration should have happened in the first place or whether the arbitration award is valid on its face since it's a default. There are a number of arguments we would have liked to have raised. But because Judge Gales denied us the opportunity to intervene, we weren't able to do so. Well, so hold on. I've got a question piggybacking on Judge Marcus's question. I assume that AIG makes a motion to confirm this award. There will be a new civil action number, new district court proceeding, and that you might then seek to intervene in that proceeding. But why is your motion to intervene in this proceeding not moved? I don't know. Well, everything is proceeding in front of Judge Gales. I don't know that it would get a new matter number. I don't know that they would not seek in the action that already includes they're insured to confirm the arbitration award. I think about it in a different way. Did Judge Gales close his case or did he just compel the case to go off for arbitration awaiting for some resolution before the arbitrator? And then in the normal course of events, it would come back to the district court to confirm the award or not. Isn't that the normal way these cases would go? Yes, there are some administrative closures sometimes that are a little bit of a hybrid, but I don't recall. I think he did close the case. Did not close the case here, did he? I don't think he closed the case. Mr. Raynor, let me ask you this question. When I look at the proposed complaint that accompanied the motion to intervene, it sought two types of relief. One was a declaration about whether Rainforest and Vondergolt had to arbitrate, and the other was for an injunction to stop the arbitration. So, given the relief to ask for in that complaint, why has that not moved? Because the arbitration has already gone forward, so you can't get either of those types of relief now. I think we can get the first type of relief. Obviously, there have been issues of injunctions on both sides. The Hong Kong court, after Judge Gales ruled in McCullough one, granted the injunction as against the McCulloughs. I agree that for the purposes of seeking to prevent what has already happened, the injunction would probably be moot here, but there's still the issue, and I started this by saying that there needs to be consistency. So, there are two proceedings happening, and on one hand, we have a finding that AIG and its insured can go have an arbitration, and that there is only incidental benefit as a judgment creditor that the McCulloughs can rely on to intervene there. But at the same time, in McCullough one, the argument is that the McCulloughs are standing in the shoes of the insured, and they are so inextricably intertwined that all the obligations under the policy, including the obligation to arbitrate, which we dispute exists for the Global Liberalization Clause foreign policies issue, all those things, we are bound by them because we are so intertwined, and it has to be one or the other, and it can't be. You said, and I think this harks back to Judge Newsome's question, you said in your response to the motion to dismiss that if you were granted leave to intervene, you would raise objections to the findings of the arbitration panel and argue that the Why is it not right or ripe. Why is that not right, not correct, not correct. Okay. New claims beyond your original complaint. What's your response to that. Some of what the pleadings reflect is the changing nature of the circumstances it's not typical to have parties litigating in front of the same judge in two cases on parallel issues, while at the same time there's another court in a foreign jurisdiction, making the court ruled in McCullough one, and that has somewhat of an effect in terms of the reverse level to combo, and what the district court has to consider in McCullough one. Again, what I'm asking for is there needs to be consistency from both the courts and from AIG. If, if purposes of intervening in an action between the insurance company and it's insured. The only thing as a judgment creditor. The McCullough's has is a financial interest, and they aren't really bound by the result. Then, then, then that needs to carry forward it and be the law of both cases, it can't be that in one case there's the argument being put forward that equitable principles are bind the McCullough's to an arbitration because they are in the shoes of the Can I ask you a different question. As I see it, we have three in front of us. One is whether the case has been rooted. We've spent the last 17 minutes basically talking about movements. Let's assume for the purposes of my question. This case is not moved, or the something here is not moved, and therefore we are obliged to address the merits, as I understand that second pivotal question. It's whether or not you had a right to intervene. In, in this case, why did you have a right to intervene. This is not permissive intervention, but this is intervention by right. Our law recognizes that a judgment creditor has certain rights with regard to insurance proceeds state the state courts recognize that and we cited the Higgins case. Typically federal bank bankruptcy courts recognize that and will often permit the claimant and the insurance company to step outside of bankruptcy and address their, their matters independently. We think that's the basis of a legally protected interest in the, in the insurance policy. Well, that's what many protected interest do you have. As a judgment. As a judgment creditor. I agree, Your Honor, we are arguing McCullough one that we are not bound by the policy. But that needs to be the case in both cases. And that's what the consistency argument is, if we are not permissive, or as a matter of right interveners in this case, then we can't be bound by the policy in McCullough one we can't be told in McCullough one that we are such a necessary element that everything we do arises from the policy and therefore we are bound by the arbitration clause. In this case being told, we don't have a right to intervene because we only have an incidental economic interest. I think the state law, and the federal law recognizes that as a judgment creditor under under Florida practices, we have an interest in what happens more than just incidental, but if the court rules that we do not that that needs to be consistent in the other cases well. One more question Mr. Marina if I may, I saw the district court docket that there will be a mediation tomorrow and McCullough one is that still proceeding. It is your honor. And who is the mediation between which parties. AIG, and the McCulloughs, it will be at least our second, possibly, it's at least our second mediation to provide us with an update after that mediation occurs. Of course, your honor. Thank you. I have one final question on intervention as a right. In order to intervene as a right you've got to show the applications timely that you have an interest relating to the property in the transaction that you're so situated that the disposition as a practical matter may impede or impair your ability to protect the interest and finally and fourth and this is what I want to question you about that your interest is represented inadequately by the existing parties to the suit. Why are your interests inadequately represented here by rain forest. Thank you. Your honor. Top item number three goes to what we've been arguing about for some time which is whether or not the what what the what the protected interest is, but, but in terms of number four the facts here show that the, we are presently adverse by judgment to the rain forest defendants have essentially accepted a default and not sought appellate relief, they have given up. And so our interests are not plainly on the facts not adequately represented. There's no incentive by the rain forest defendants here someone who was judgment adverse to us. This is not a circumstance where we're both in the same shoes, moving forward in the same direction we are, we are adverse judgment creditor versus judgment debtor, and the facts have borne out that they just did not participate in the, or they will you and rain forest want to avoid arbitration in Hong Kong I suppose that's already happened. Both of you argue that the global liberalization clause applies and overrides the dispute clause. Both want a coverage determination in order to resolve the IDs liability in the McCulloch action both seek to haul AIG into federal court for purposes of resolving AIG liability. I'm having a hard time understanding why rain forest can't properly perfect whatever interests you have otherwise might have to this coming argue into it isn't loop, etc. And we just get to the square question about whether the district court error in denying your motion to intervene as a right to responses. One, we are adverse party still, and the courts in the district courts in Florida have recognized this distinction between parties who are still seeking coverage and parties who are adverse vis a vis a judgment creditor judgment debtor status, and to the facts of this case, show that that there's, as counsel pointed out, there is no appeal by the rain forest defendants there is no meaningful participation apparently or their participation was rejected in Hong Kong. The facts bear out that they didn't. I'm having trouble, perhaps wrapping my arms around what's going on here, but while your interests, and the interests of rainforests were adverse in the McCulloch action haven't you since settled with them and a final judgment entered, thereby resolving any dispute over liability at least as between you and the rain forest defendants, not precisely your honor, there was an agreement between Defense Council and plaintiffs counsel in the tort case to submit the matter to arbitration. It was arbitrated with judge gales express permission by order a high low agreement was reached to to in exchange for some considerations in the arbitration, a judgment was entered thereafter based on the arbitration, but that judgment is still viable as against the rain forest defendants. Thank you. Thank you. Thank you, Mr Reno will now hear from Mr nine. Thank you, Judge prior, and may it please the court. My name is john nine and I represent the Apple II AIG Hong Kong, as Judge Marcus alluded, there are some complicated civil procedure issues here but two pretty simple and basic overarching points really ought to inform the courts analysis. First basic point is that this was not the McCulloch case as Mr Reno has represented McCulloch have their own case, it's still pending in the district court. The case in front of the court now was rain forest and Vanderbilt's this case. The second basic simple overarching point is that rain forest and Vanderbilt's this case the case now in front of you was not an action in which rain forest and Vanderbilt's we're seeking a declaration about coverage. The question that rain forest and Vanderbilt's put in front of the district court was whether they had to arbitrate their dispute with AIG Hong Kong, not the merits of the coverage dispute itself. Those two basic points really can inform all three of the issues currently before the court mootness, the correctness of the district courts decision as to intervention, and the correctness of the district courts decision as to the merits or the arbitrability of this dispute. I think the court can resolve this case without diving into all of those issues and as Mr Marino's argument suggested the court may want to focus on one issue more than the others and I'd welcome the courts immediate questions on whichever issue or whatever points they think you think would be most probative. But until you take me in one direction or the other I'll go and what I think is the jurisdictionally logical order, starting with mootness moving to intervention and finally if we have time to the arbitrability question on mootness, I think, Judge Newsome asked the right question the question that Mr Marino needs to answer is what exactly he hopes to accomplish by intervening in the case in this posture. Now that Rainforest and Bondergoltz have arbitrated the dispute or now at least the arbitration is done. And now that the McCulloughs have in their separate case argued that they're not subject to arbitration and have sought their own anti-suit injunction in that case. The McCulloughs have suggested that they still want to intervene here to try to get the Rainforest McCullough arbitration judgment vacated, but they cited no authority suggesting that they as interveners can obtain a relief or can obtain that relief and an appeal of this posture and I don't think it makes sense that they could. And again that goes back to the two basic points I raised earlier this isn't their case, and this isn't even Rainforest and Bondergoltz's coverage dispute. Because of that, there is no pending motion to enforce the arbitrator's judgment in the district court now. Mr Dimon, a question about that. Is this case still open or did the district court close it is my first question. And second, have you yet moved to confirm the arbitration award. A process whereby if you do it, at least the parties in the case can raise some challenge. So the answer to your second question is the more straightforward one. I'll start with that, Judge Marcus. The answer is no. No motion to confirm the arbitration award has been filed by any party at this point in time. Answer to the first question is a little more complicated. You would be the appropriate party, presumably, to move to confirm the arbitration award, wouldn't you? I presume. I can't make any representations about what my client's next step will be. I think part of the reason why I can't make any representations is that it's a little unclear in light of the pendency of the separate McCullough action, how all this is eventually going to unfold. My client has sought arbitration of the McCullough action as well. And it may be that the question of the validity of the arbitration judgment as to Vondergoltz and Rainforest gets litigated over in that action in some way. Think ahead with me three steps. If you don't move to confirm the arbitration award within three years, that's the time you have by statute. What happens then? Does the arbitration award become null and void and of no consequence? Normally, what one would do is one would take an arbitration award and go back to the district court that ordered arbitration in the first place and say, judge, we got this award. It says X, Y, and Z. It was properly entered. We want you to confirm the award. If you don't do that, what's the consequence of the arbitration in Hong Kong at all? Well, I think the answer is a little unclear at this point in time, Judge Marcus, for a few reasons. First of all, as I mentioned earlier, this wasn't the coverage case. This was a case about arbitrability in the first instance. So it's a little unclear what exactly Judge Gales resolved when he compelled arbitration of this case, of the arbitrability issue, rather than the coverage issue itself. I do think that it would be, as Judge Newsom suggested, within my client's discretion, instead of trying to go back and reopen this case and flat that issue. This case was never closed by the district judge. If I understand it right, I may have misunderstood this, but I thought what happened here was, one, the district court says you've got to arbitrate. Boom, you go off to Hong Kong and you arbitrate. He keeps the case open, presumably on the theory that you're going to come back and confirm the award before him, which would then yield a conclusion and then he would close it. But I thought this case was still open by Judge Gales because he was waiting for that to happen. Maybe I've misunderstood that. My reading of the record, Judge Marcus, is that the proceedings in front of Judge Gales in this case are currently done. And the precedent I would point you to that guides the way on that issue is the Martinez v. Carnival case from a few years ago. I think Judge Dubino wrote the unanimous majority opinion. I believe you were on the panel. I read Martinez v. Carnival to say that in circumstances like these, where the district court resolves all the issues in front of it, issues a judgment-compelling arbitration of the matters in front of it, does not stay the case as the Federal Arbitration Act allows and instead closes up shop. That is a final judgment. I agree with you that the district judge could have done either of two things once he sent the case off to arbitrate. He could have closed this case or he could have stayed the ultimate resolution and kept it open, awaiting the resolution of the arbitrator's decision and an attempt to confirm it in federal court. I thought that's what happened here. The district judge never closed the case. What he did was stay it. Maybe I have that wrong. The reason I perseverate over it is if this case is over, it seems to me this case is moot. I think you're dead right about mootness. But if the case here is still open, the district court left it open, and left it open because it was awaiting some confirmation of the arbitration award, then maybe it's not moot. At least I may have misunderstood that. Help me understand this. Okay, so point number one, the district court's order does not purport to close the case entirely, unlike the district court order that you dealt with in Martinez. It does not expressly say case closed. Nonetheless, the order also does not say stay granted, come back to me when you're done with the arbitration. And if you look on the court's docket, the court's docket suggests that the case is closed, it's up on appeal, and that Judge Gales views the case as over. That makes sense because of one of these basic points I keep coming back to. This was not the coverage action, right? If Vondergoltz and Rainforest had filed this action seeking a declaration of coverage, and Judge Gales had said, you guys need to go to Hong Kong and arbitrate the merits of the claim that Vondergoltz and Rainforest actually brought, then it would have made sense for Judge Gales to stay this case and await to hear what happens in Hong Kong, and await a motion to confirm that judgment. Let's do it slightly differently. Let's assume, argue, and know the district court didn't close the case, that in effect what he did was stay it. Because when a district judge in the Southern District of Florida wants to close a case, by God, they say it, and they say it expressly because they want that case off their calendar and they tell the clerk of court to administratively close the case. That didn't happen here. Let's just assume the case was still open, awaiting arbitration. That may not be right, but just assume it for my question. If the case is still open and the district court was waiting for you to move to confirm the arbitration award here, would this case be moved? I think so, for the reasons suggested by Judge Pryor's question. At least this appeal. Maybe the case itself would not be moved, but the appeal would be. Tell me why. Because the McCulloughs sought to intervene in this case for the purposes of stopping the arbitration ab initio. They sought a declaration that the arbitration didn't have to happen. They sought an injunction to prevent the arbitration from happening. If this case is still open, and I'll reserve my right to object to the premise of the question. I understand that you're asking me to assume otherwise. If the case is still open, the proper course of action, I think, would be for the court to dismiss this appeal as moot. Their request to stop the intervention is now moot. And if further proceedings are had in the district court relating to confirmation, at that point in time, the McCulloughs can decide whether they want to intervene in those proceedings. And the court, Judge Gales, can weigh the merits of the motion to intervene at that point in time, which would be a different question, I think, from this question whether they were entitled to intervene over the arbitrability issue in the first place. Mr. Niman. Yes, if the case were reopened, in my mind, or the case came back to life in some way, and new relief were sought by the parties to the case, then I think that the McCulloughs would have the ability to at least seek to intervene at that point in time to assert whatever interest they claimed at that point. Mr. Niman, can I ask you just a further clarification? So your point in responding to Judge Marcus was that, you know, you said this isn't the coverage action, this was an action about arbitrability. And so I've just pulled up Martinez. And in Martinez, although there was a case closed, case closed, denominated on the docket, we said, our focus is not the district court's label, but rather the effect of the district court's order. When the district court compels arbitration and disposes of all pending motions, it leaves the court with nothing more to decide, and it effectively and functionally has issued a decision that ends litigation on the merits. Is your point that that's what happened here? Because the only thing before the district court was arbitrability, that decision with respect to arbitrability has been made? Yes, exactly. And I really don't think Judge Gales would have anticipated on the arbitrability issue, another motion coming back to him at a later point in time to confirm the arbitrator's judgment on arbitrability. Your point is that that might have been different if what he had before him were two questions. One is to arbitrability and two is to coverage. He sends it to Hong Kong, it gets arbitrated, then he might expect that this is coming back to me on the coverage question. Your point is that that's not what he had. He just had arbitrability. So once he decided arbitrability, what would he be waiting for? And that seems to me what Martinez basically says. Yes. Okay, I got it. I got it. I understand. And Mr. Nyman, is that your response to Mr. Marino's argument about the risk of inconsistency, that there is none because the only question before the court in this action was the arbitrability issue? Right. I don't think there will be inconsistent judgments. I don't think there are inconsistent judgments currently. Judge Gales is currently considering whether to send the McCullough's own claims in their own case to arbitration. I believe Judge Gales will order arbitration of those claims, but I don't see the risk of inconsistent judgments here at all. Certainly not on the current state of things. If we were to determine that this case is moot, just a technical question, would it be appropriate for us to dismiss the appeal with directions for the district court to vacate the underlying judgment under the Supreme Court's decision in Munsingware? I don't think so for two reasons. First of all, the Rainforest and Bondergolds have not taken an appeal of the case, so it would be difficult to moot the case simply because an intervener has filed an appeal. Yeah, I'm sorry, I wasn't clear. I mean vacate the district court's order denying the motion to intervene. I have not thought that question through. It seems to me that the court doesn't need to. I guess my thinking was that it was the appeal itself that was moot. The district court's judgment as to whether the McCullough's could intervene was valid at the time, and the issue here is simply whether it makes sense to appeal now that the arbitration has been had. Right, but if the case is moot before us, that doesn't mean it necessarily had been moot at the time the district court decided it. That's your point. Yes. But it having become moot, I think the question that you're being asked is, going beyond saying the appeal is moot because of A, B, and C, are we obliged to go further and direct the district court to vacate its determination about intervention as of right? Case is moot. Maybe it wasn't moot when the district court said what it said, and maybe the district court got it right. I personally think the district court got it right on the merits of intervention. But are we to direct the district court to vacate its determination on the grounds of mootness that arose subsequently in the appellate action? What you're saying it's appellate, it's moot for appellate purposes. What does that do to the underlying determination that they were not permitted to intervene as of right because of A, B, C, and D? I do not know of any authority, Judge Marcus, that would hold that the court of appeals is obliged to vacate a slice and a relatively procedural slice of a case like this one on mootness grounds when the underlying judgment, I mean the big enchilada here, is the judgment regarding arbitrability and that judgment is not deemed to be vacated because it's not moot. Let me ask the question in a slightly different way. If we did not vacate that judgment, that determination remained unaddressed by the circuit on the grounds of appellate mootness, and there was another effort to intervene in a new suit, let's say. Going back to what Judge Newsom had suggested, could you claim that this issue has already been adjudicated and it has preclusive effect? Maybe you could, I don't know. So you're not asking about precedent, you're asking about collateral estoppel at this point in time? Yeah. Well, it's hard to imagine a circumstance in which collateral estoppel would be applicable because the intervention decision was made based on the specific facts of this case and the specific facts put in front of the district court by the McCulloughs. So I'm not sure, as much as I might want to try to make a collateral estoppel argument in some other case, I'm not sure. You're going four steps ahead and it's not at all clear you have identity of issues. I appreciate your answer. Thank you. I see I'm out of time. If so, I thank the court. Thank you, Mr. Nyman. Mr. Moreno, you have three minutes for rebuttal. Thank you. A number of Mr. Nyman's arguments raise exactly the point that I think Judge Marcus is trying to get to directly or indirectly. We heard this is not the McCulloughs case, and yet they argue in their briefing that the determination of coverage, because the determination was made as to coverage for the judgment in Hong Kong. They keep trying to classify it as a question of arbitrability, but the matter went to Hong Kong and the Hong Kong court determined coverage and that was the basis for their ultimate ruling. I think so. I think anyway, I take Mr. Nyman's point to be that Judge Gales decided that the coverage question was arbitrable and so sent it to Hong Kong. And he having done so, he was kind of done like the coverage issue was never coming back to him. And I don't know that I agree with that because we have the coverage issue in the McCullough case. And what Judge Gales said was in the McCullough case that when it comes back from Hong Kong, he would look at and consider what the Hong Kong court did with Rainforest in the McCullough case which is why I keep coming back to this important point. If it's not the McCullough case, you can't say the McCulloughs are bound by what happens here. If it's not a coverage decision being made in Hong Kong, then they can't carry it forward and say to the McCulloughs, this is a coverage decision made in your absence, we're using it against you. If the issue was only to challenge arbitrability in the Hong Kong court, that was never raised. Those issues were never raised. And in fact, contrary to the policy's language, which says plainly on a disputes clause, each side bears their own fees and costs, AIG has been getting judgments for and against the participants in the Hong Kong proceedings. So, it's a mix and match that I want to try to avoid. There needs to be consistency. If it's not the Hong Kong. Mr. Maria, didn't Judge Gales kind of walk that back though and he said he wouldn't necessarily, what he was doing wouldn't necessarily be bound by what happened in Hong Kong? Something to that effect. He waffled a bit. He initially said, that would determine what he decided here. When I pointed out that if it's decided in the absence of the McCulloughs, then it can't be binding on them. He walked it back but said, but you know, it'll be, it will influence his decision or he'll look at that and take that into consideration in his decision, which is again, it can't be that the matter is not the McCulloughs to intervene in, the matter is not the McCulloughs to participate in, but the decision that results from it, the default that was entered becomes binding on the McCulloughs or influences Judge Gales. So if the court's going to say it's moot, it shouldn't have happened. You weren't allowed to intervene. This is not your case. Nothing here that happens has any effect on you. And you can't have it both ways AIG. You can't say you have only a marginal interest in this litigation here. But in the same litigation directly by you, you are so intertwined with the contract you are so bound by you're stepping into the shoes standing in the shoes the phrase they keep using incorrectly because there's no assignment. But you can't be standing in their shoes in one case, and a dispassionate uninvolved party in the parallel case. And I see him over my time again. Thank you for your help counsel we've got your case.